**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, *ex rel.* AARON SHILOH, M.D., FSIR** *Plaintiff,* | : | **CIVIL ACTION** |
| | : | **NO. 18-5458** |
| **v.** | : | |
| **PHILADELPHIA VASCULAR INSTITUTE LLC, *et al.*,** *Defendants.* | : | |

NITZA I. QUINONES ALEJANDRO SEPTEMBER 23, 2026

## MEMORANDUM OPINION

### INTRODUCTION

Aaron Shiloh, M.D., ("Relator"), filed this *qui tam* action against Defendant James McGuckin, ("Defendant McGuckin"), and the Philadelphia Vascular Institute, LLC, asserting violations of the False Claims Act, (the "FCA"), 31 U.S.C. § 3729 *et seq.* (ECF 1). Following the decision of the United States of America, (the "Government"), to intervene in the action, the Government served Defendant McGuckin with discovery requests in December 2024, (ECF 69, at 12). The Government alleges that Defendant McGuckin has not provided sufficient materials in response, and now moves to compel Defendant McGuckin to produce the requested records and information.

Before the Court are the Government's motion to compel the production of documents and for sanctions, (ECF 69), Defendant McGuckin's *pro se* response in opposition, (ECF 71), the

Government's reply, (ECF 72),[1] and Defendant McGuckin's counseled *sur*-reply, (ECF 90).[2] For the reasons set forth herein, the Government's motion to compel the production of documents and for sanctions is granted, *in part*, and denied, *in part*.

**BACKGROUND**

Briefly, the alleged facts relevant to the Government's motion are as follows:

> On December 17, 2018, Relator filed this *qui tam* action against Defendant McGuckin and Philadelphia Vascular Institute, LLC, asserting violations of the FCA. (ECF 1). Specifically, Realtor averred that Defendants repeatedly performed medically unnecessary procedures for Medicare and Medicaid patients, and sought reimbursement for such procedures, thereby, making false claims to the United States Government. (*Id.*). In August 2020, while investigating these allegations to determine whether to intervene, the Government served Defendant McGuckin's then-counsel with a Civil Investigative Demand for certain patient files and copayment information. (ECF 69, at 10). In response, Defendant McGuckin produced an "Investigatory Sample" of patient files and copayment information. (*Id.*). Sometime in January 2022, Defendant McGuckin was informed that he was a defendant in the present action. (*Id.* at 21; *see also* ECF 10). On February 28, 2023, the Government filed a notice of intervention, indicating its decision to

---

[1] Contrary to Local Civil Rule of Procedure, ("Local Rule"), 7.1(c), the Government filed its reply, without first seeking leave from this Court. *See* L. R. Civ. P. 7.1(c) ("The Court may require or permit additional briefs or submissions if the Court deems them necessary."). "The Local Rule does not address situations where a reply is contemplated. Thus, since the filing of a reply is not addressed by the Local Rule or any Federal Rule of Civil Procedure, it has been interpreted that a reply is not permitted without leave of court." *Williams v. Elliott*, 2021 WL 12407030 at *1 n.1 (E.D. Pa. December 1, 2021) (citing *McNiff v. Asset Mgmt. Specialists, Inc.*, 337 F. Supp. 2d 685, 687 n.1 (E.D. Pa. 2004)). "Consistent with this interpretation, this Court generally requires a party to file a motion for leave before filing a reply." *Id.* While the Government's reply will be considered, this Court will not consider future filings by the Government in violation of this Local Rule.

[2] By Order dated October 7, 2024, this Court permitted counsel for Defendant McGuckin and the corporate entity defendants — Philadelphia Vascular Institute, LLC, Pennsylvania Vascular Institute, PC, Lehigh Valley Vascular Institute LLC, PA Vascular Institute LLC, Peripheral Vascular Institute of Philadelphia, LLC, and Main Line Vascular Institute LLC, (collectively, with Defendant McGuckin, "Defendants") — to withdraw from this case. (ECF 51). Defendant McGuckin proceeded *pro se* until October 30, 2025, when he retained new counsel to represent Defendants. (ECF 73). On November 5, 2025, Defendants filed a motion for oral argument on the underlying motion to compel and for leave to file a *sur*-reply consistent with Local Rule 7.1(c). (ECF 76). By Order entered on March 20, 2026, this Court granted Defendants' motion, *in part*, permitting Defendants to file a *sur*-reply and denying the request for oral argument. (ECF 89).

intervene on behalf of Relator. (ECF 27). The Government subsequently filed a complaint in intervention against Defendants, asserting claims under the FCA for, *inter alia*, knowingly submitting or causing the submission of false claims for reimbursement to federal health care programs for medically unnecessary, invasive vascular procedures; knowingly making false statements to the Government related to those procedures; and violating the Anti-Kickback Statute, 42 U.S.C. §§ 1320a-7b(b), (g). (ECF 32). In response to the complaint, Defendants filed a motion to dismiss the complaint, (ECF 36), which was denied on March 29, 2024, (ECF 42–43).

Following that denial, Defendants filed an answer and discovery ensued pursuant to a Scheduling Order. (*See* ECF 49). The Government served Defendants with its first discovery requests in December 2024, for, *inter alia*: (1) the updated and complete versions of the patient files Defendant McGuckin alleged to have produced as the Investigatory Sample in response to the earlier Civil Investigative Demand (Document Request No. 1); (2) the complete patient files for a statistically valid random sample of claims from all time periods and billing codes at issue in the operative complaint (Document Request No. 2); and (3) records sufficient to show compliance with Medicare's copayment collection requirements (Document Request Nos. 4–12). (ECF 69).

On January 17, 2025, Defendant McGuckin informed the Government that he needed more time to obtain much of the requested files and information because certain information was stored with third parties who would not grant him access. (ECF 69-2, at 2). Specifically, Defendant McGuckin indicated that "the McGuckin entities," (*i.e.*, Defendants), had been managed by Vascular Access Centers, ("VAC"), which housed "all patient and billing data" with an entity called Endovascular Health Services, LLC, (hereinafter, "EHS"), until October 2017, when the data was transferred to an entity called "NextGen." (*Id.*). Defendant McGuckin further indicated that all of the "McGuckin entities," except for Philadelphia Vascular Institute and James McGuckin, MD, FSIR, ceased to be managed by VAC in 2017, and were sold to Metro Physician Specialty Group, PC, ("Metro"), on April 30, 2022. (*Id.*). Defendant McGuckin argues that he was unable to procure the data from these practices, (the "non-VAC Entities"), because Metro failed to pay NextGen for data storage, leading NextGen to "refuse to transfer data until the Metro balance is cleared." (*Id.*). Notably, Defendant McGuckin argued that Metro's assets "reverted back to [him] after [a] failed buy-out." (*Id.*). He further argued that other data — patient imaging data — from the non-VAC Entities, is housed with an entity called "RadSource LLC," which also refused to release Defendant McGuckin's patient data prior to account resolution. (*Id.* at 3). Despite these setbacks, Defendant McGuckin informed the Government that "[b]oth NextGen and RadSource readily admitted that the data is owned by me." (*Id.*). He also indicated that RadSource had already sent him some of the imaging data it held, which he was willing to share with the Government. (*Id.*).

In the same communication with the Government, Defendant McGuckin indicated that he was unable to access data from the entities that were still managed

by VAC, and housed with EHS and NextGen. (*Id.* at 2). He indicated that he could not access this data because "[t]he Vascular Access Centers Trustee ha[d] not responded to [his] patient data requests thus far." (*Id.*). The VAC Trustee, Stephen Falanga, was in that role as a result of VAC's involvement in a bankruptcy proceeding, in which the Bankruptcy Court appointed a Chapter 11 trustee to manage the company instead of Defendant McGuckin. (ECF 90). In March 2025, following Defendant McGuckin's response to the Government's discovery request, the Government issued subpoenas to the third-party entities Defendant McGuckin had identified; *to wit*: NextGen LLC, Physician Revenue Management Services, Intelerad Medical Systems, RadSource LLC, and the Trustee of the Estate in Bankruptcy of Vascular Access Centers, L.P., ("Third-Party Entities"), seeking the same patient medical files and copayment information that it had sought from Defendants as part of the December 2024 discovery requests. (ECF 69, at 14). However, it does not appear that the Government issued a subpoena to EHS.

Thereafter, the Government filed the instant motion, pursuant to Federal Rules of Civil Procedure, ("Rule[s]"), 34 and 37, seeking to compel Defendant McGuckin to produce all of the requested patient medical files and copayment information that he had not yet transferred to the Government, and for sanctions if Defendant McGuckin fails to do so. (ECF 69). In response, Defendant McGuckin argues that he has already "provided over nine gigabytes of information" in response to the Government's request and "has made a good faith effort to provide every document in his possession and identify every third party that possesses the rest." (ECF 71, at 4, 6). He further argues that any information or records he has not produced are "neither in his possession, nor under his control," but are rather "held by third parties." (*Id.* at 4). More specifically, Defendant McGuckin argues that he does not have possession of the requested records and information because the Equity and Asset Purchase Agreement, ("VAC asset sale"), (ECF 90, at 10–76, Ex. B), approved in a bankruptcy proceeding gave EHS — an entity with no connection to Defendant McGuckin — sole possession, custody, and control of the requested medical records as a matter of law. (ECF 90, at 3–4). Defendant McGuckin further argues that the Government issued subpoenas to the Third-Party Entities that maintain control over the requested copayment records, but that the Government has not taken action to enforce those subpoenas. (*Id.* at 4–5). The Government has not disputed this argument. However, Defendant McGuckin has offered no such specific argument justifying his inability to access the data of the non-VAC Entities, except for his earlier statement to the Government that third parties refused to grant him access until payment balances were cleared, despite their alleged acknowledgement that he owned that data. (ECF 69-2; *see also* ECF 90).

**LEGAL STANDARD**

Generally, Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case." Fed. R. Civ. P. 26(b)(1). Rule 34 permits parties to serve requests for production of documents that are in the "responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The "party seeking production of documents" — here, the Government — "bears the burden of establishing the opposing party's control over those documents." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991) (citing *United States v. Intern. Union of Petro. & Indus. Wkrs.*, 870 F.2d 1450, 1452 (9th Cir. 1989)). "In the context of [Rule] 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). "When the opposing party fails to respond or provides incomplete responses to a discovery request, the requesting party may 'move for an order compelling disclosure or discovery' pursuant to [Rule] 37." *Rosenblit v. City of Phila.*, 2021 WL 288887, at *3 (E.D. Pa. Jan. 28, 2021) (quoting Fed. R. Civ. P. 37(a)(1); citing Fed. R. Civ. P. 37(a)(3)(B)).

Rule 37 authorizes district courts to sanction a party for conduct that obstructs discovery. *See generally* Fed. R. Civ. P. 37. These sanctions are intended to "(1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006). Rule 37(b) specifically authorizes sanctions against a party who "fails to obey an order to provide or permit discovery," including an order under Rule 37(a). Fed. R. Civ. P. 37(b)(2)(A). In response to this failure, the Court "may issue further just orders" as it sees fit. *Id.*

**DISCUSSION**

As noted, the Government moves, pursuant to Rules 34 and 37, to compel Defendant McGuckin to produce the requested patient medical files and copayment information, and for the

imposition of sanctions if Defendant McGuckin does not produce the requested documents. (ECF 69). The request for production and the motion for sanctions will be addressed in turn.

***I. Request for Production***

As a preliminary matter, this Court notes that the records and information at issue are relevant to the Government's FCA claims and are proportional to its needs in the case. Fed. R. Civ. P. 26(b)(1). The Court also notes that there has been no claim that the information being sought is privileged. *Id*. Therefore, the materials are within the scope of discovery. The main contention between the parties is whether the requested materials are in Defendant McGuckin's "possession, custody, or control" and, therefore, subject to production. Fed. R. Civ. P. 34(a)(1). The Government appears to accept Defendant McGuckin's claim that he does not have possession or physical custody over the materials that he has not yet provided. (*See* ECF 69, at 18). However, the parties dispute whether Defendant McGuckin, nonetheless, has control of or controls said requested records and information.

In its motion to compel, the Government argues that Defendant McGuckin was required by federal regulations (42 C.F.R. § 424.516(f)(1)(ii)), as a provider participating in Medicare, to maintain patient medical files and copayment collection records. (ECF 69, at 18). The Government further contends that, in August 2020 — when Defendant McGuckin was served a Civil Investigative Demand for such records — Defendant McGuckin had possession, custody, and control of the records, and that he had an obligation to maintain and preserve these records. (*Id.*). The Government argues that Defendant McGuckin's document retention obligations became even more stringent when he was informed of this lawsuit in January 2022. (*Id.*). The Government posits that, even if Defendant McGuckin no longer has possession of the requested records, he still has control over them. (*Id.*). In his response, Defendant McGuckin disagrees and argues that he

lacks possession, custody, and control over the requested patient medical files and copayment collection records that he has not yet provided to the Government. (ECF 71, 90).

As Defendant McGuckin's January 2025 response to the Government makes clear, his level of access to the records and information of each particular entity depends on whether the entity is one that ceased to be managed by VAC in 2017, (the non-VAC Entities), or one that continued to be managed by VAC after 2017, (the "VAC Entities"). (*See* ECF 69-2). As Defendant McGuckin averred in that communication, the VAC Entities were Philadelphia Vascular Institute and James McGuckin, MD, FSIR; while the non-VAC Entities were all the other corporate entities from which the Government sought records and information in its discovery request. (*See id.* at 2). The Court will separately address the requests for production from these two groups of entities.

*A. The VAC Entities*

Defendant McGuckin argues that, before he became aware of this action against him, he lost legal control of the VAC Entities' records and information through an asset sale during VAC's bankruptcy. (ECF 90). To bolster this argument, Defendant McGuckin asks this Court to take judicial notice of the fact that the medical records in VAC's possession were included in a judicial sale of VAC's assets to EHS, a sale that was approved by a Bankruptcy Court. (*Id.* at 3). In support of this request for judicial notice, Defendant McGuckin included the following documentation; *to wit:* (1) a February 7, 2020 Bankruptcy Court Order appointing a Chapter 11 Trustee and depriving Defendant McGuckin of authority to take action on behalf of VAC, (ECF 90, at 8, Ex. A), *see also In re Vascular Access Ctrs., L.P.*, Case No. 19-17117, ECF 235 (Bankr. E.D. Pa. Feb. 7, 2020); (2) an April 7, 2021 Equity and Asset Purchase Agreement between VAC and EHS, submitted to Bankruptcy Court, (ECF 90, at 10–76, Ex. B), *see also In re Vascular Access Ctrs.*, ECF 730; (3) an April 8, 2021 Bankruptcy Court Order approving the Equity and

Asset Purchase Agreement between VAC and EHS, (ECF 90, at 78–113, Ex. C), *see also In re Vascular Access Ctrs.*, ECF 733; and (4) a June 27, 2025 Bankruptcy Court Order approving a settlement agreement between VAC and EHS, (ECF 90, at 115–24, Ex. D), *see also In re Vascular Access Ctrs.*, ECF 1365. This Court takes such notice, pursuant to Federal Rule of Evidence 201, of the fact of this sale, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned". *See* Fed. R. Evid. 201(b)(2).

A careful review of the submitted documentation of the VAC Asset Sale reveals several facts: First, as of February 7, 2020, Defendant "McGuckin [was] no longer authorized to take any action on behalf of [VAC]." (ECF 90, at 8, Ex. A). Second, the list of assets sold by VAC to EHS included "(i) all of Seller's books and records that relate to the operation of the VAC Centers, and (ii) all of the books and records of the VAC Centers in Seller's possession or control." (ECF 90, at 24, Ex. B). VAC and EHS were careful to clarify which records were included in the sale and which assets were not included in the sale, and added that "for the avoidance of doubt, Buyer is purchasing all of Seller's books and records that relate to the operation of the VAC Centers." (*Id.* at 25). Third, the Bankruptcy Court approved this sale and, in doing so, specified that the sale of the "Acquired Assets to Buyer at Closing will be a legal, valid, and effective transfer . . . and shall vest Buyer with *all of [VAC's] right, title, and interest* of, in, and to . . . the Acquired Assets." (ECF 90, at 92, Ex. C) (emphasis added). The Bankruptcy Court further added that "[a]s of the Closing, . . . the Buyer shall be fully and irrevocably vested with all right, title, and interest of [VAC]" in the transferred assets. (*Id.* at 95). Fourth, in the settlement agreement between VAC and EHS, the parties agreed that "EHS shall be deemed the custodian" of the records that "were transmitted to EHS" through the VAC Asset Sale. (ECF 90, at 121, Ex. D).

As noted, the "party seeking production of documents" — here, the Government — "bears the burden of establishing the opposing party's control over those documents." *Camden Iron*, 138 F.R.D. at 441 (citing *Intern. Union of Petro.* 870 F.2d at 1452). This means that the Government must prove that Defendant McGuckin at least "has the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic*, 380 F.3d at 160.

Clearly, the Government has not established Defendant McGuckin's control over the requested documents from the VAC Entities. To the contrary, the Government has offered only a conclusory statement that "[i]f [the requested] materials are no longer in [Defendant McGuckin's] possession, they are still under his control." (ECF 69, at 18). In light of the arguments and evidence proffered, and considering this assertion, this Court finds that the Government has not met its burden of demonstrating Defendant McGuckin's control over the information requested.

Moreover, the Government's argument is overcome by Defendant McGuckin's proffer of the VAC Asset Sale approved in VAC's bankruptcy proceedings. The VAC Asset Sale supports Defendant McGuckin's argument that EHS' acquisition of patient medical records precludes a finding that *he* retains any control over the requested records and information from the VAC Entities. As the terms of the asset sale make clear, EHS assumed all rights and title to the records and information held by VAC as of April 2021, before the Government served Defendants with its first discovery requests sometime in December 2024 or filed the instant motion. Therefore, this Court finds that Defendant McGuckin did not have control over the requested documents of the VAC Entities when the Government requested them.

*B. The non-VAC Entities*

As noted, the Government argues that Defendant McGuckin controls all the records and information it has requested from Defendant McGuckin. (ECF 69). This necessarily includes the

records and information from the non-VAC Entities. The documentation the Government submitted in support of its motion to compel production of these records and information includes a copy of the message that Defendant McGuckin sent to the Government on January 17, 2025, in response to the Government's discovery request. (ECF 69-2). In said correspondence, Defendant McGuckin indicated that he was unable to procure the data of the non-VAC Entities from Metro — to which they had been sold — because Metro failed to pay NextGen for data storage, leading NextGen to "refuse to transfer data until the Metro balance is cleared." (*Id.* at 2). However, Defendant McGuckin also indicated that Metro's assets "reverted back to [him] after [a] failed buy-out." (*Id.*). He further informed the Government that "[b]oth NextGen and RadSource readily admitted that the data is owned by me." (*Id.* at 3). These admissions, demonstrated by the Government's submission of Defendant McGuckin's own words, are sufficient to show Defendant McGuckin's ownership of the records and information of the non-VAC Entities.

While Defendant McGuckin's arguments have overcome the claim that he owns the records and information of the VAC Entities, none of his submissions have overcome this proof of his ownership of the requested records and information from the non-VAC Entities. Defendant McGuckin has argued to the Government that he is unable to retrieve this information because the entities holding it will not provide the records or information to him until outstanding debts are satisfied. (*Id.* at 2–3). However, that argument does not preclude a finding that Defendant McGuckin controls the data and information in question. The relevant test is whether Defendant McGuckin at least "has the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic*, 380 F.3d at 160. As the owner of the documents, he has that ability. *Cf. McDaniel v. Bradshaw*, 2011 WL 2470519, at *3 (S.D. Fla. June 20, 2011) (finding legal right of individual to obtain "his income tax returns (from the IRS), medical records (from the medical

providers), and credit card statements and canceled checks evidencing gun purchases (from the credit card providers and/or the bank)"); *Wardrip v. Hart*, 934 F. Supp. 1282, 1286 (D. Kan. 1996) ("Financial records of the defendant in the possession of defendant's accountant are documents which defendant has the legal right to obtain."). To the extent that Defendant McGuckin faces practical difficulties in obtaining these documents related to unpaid debts, those hurdles can be overcome by the payment of the outstanding obligation.

### *II. Motion for Sanctions*

The Government argues that Rule 37(b)(2)(A) sanctions are required in this case. (ECF 69, at 20–28). Specifically, the Government seeks that it "be established as fact that any claim submitted to federal healthcare programs for payment for which the relevant patient file and copayment information were requested but not produced was false under the FCA," pursuant to Rule 37(b)(2)(A)(i). (*Id.* at 25). The Government also seeks a jury instruction, pursuant to Rule 37(b)(2)(A)(ii), conveying that jurors "may presume that the information contained in the missing patient files and copayment records would have supported the United States' position as to each of the United States' allegations and would have been adverse to [Defendant] McGuckin's defenses." (*Id.* at 26). Also pursuant to Rule 37(b)(2)(A)(ii), the Government seeks to preclude Defendant McGuckin "from introducing any evidence that would have been contained in any of the missing patient files and copayment records in support of his defense," as well as "from disputing the sufficiency of the record . . . to determine liability and damages in this litigation and at trial." (*Id.* at 27). The Government's argument is rooted in its belief that Defendant "McGuckin's purported lack of access to the requested information is the result of his own business choices, many of which were efforts to evade financial obligations and liability for his actions," (*id.* at 22), and that the Government will be prejudiced by Defendant McGuckin's failure to provide

the requested records and information, (*id.* at 23–25). These arguments and requests are premature in nature and are best resolved either as motions in limine, objections at trial, or jury instructions, and not as imposed sanctions.

Rule 37(b)(2)(A) sanctions — those sought by the Government — are only available "[i]f a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Defendant McGuckin has not yet failed to obey a discovery order, as the Court is only now issuing such an order. As it relates to the Court's order compelling Defendant McGuckin to provide the requested records and information pertaining to the non-VAC Entities, the Government's motion is, therefore, premature. If, in the future, Defendant McGuckin violates an order by failing to produce that information, sanctions pursuant to Rule 37(b)(2)(A) may well be an appropriate remedy.

However, given the denial of the Government's request for an order compelling the production of the requested information from the VAC Entities, Rule 37(b)(2)(A) sanctions are not an appropriate remedy should Defendant McGuckin continue to decline the Government's request for that information. The Court recognizes the Government's argument that the VAC bankruptcy, which prompted the asset sale that withdrew the VAC Entities' assets from Defendant McGuckin's control — therefore rendering them outside the scope of Rule 34 — was, itself, an "effort[] to evade financial obligations and liability for [Defendant McGuckin's] actions," and, therefore, a justification for sanctions. (ECF 69, at 22). The Court, however, notes that the VAC bankruptcy commenced, and Defendant McGuckin's authority over VAC was supplanted by that of a Chapter 11 Trustee, before Defendant McGuckin was put on notice of the Government's investigation into his conduct (when his counsel was served with a Civil Investigative Demand in August of 2020). (*See* ECF 90, at 8, Ex. A; ECF 69, at 18). Therefore, while the VAC bankruptcy

may have been "orchestrated . . . in bad faith in order to stop the Derivative Litigation [against Defendant McGuckin] from proceeding and to protect his own personal interests," as the Bankruptcy Court found, *In re Vascular Access Centers, L.P.*, 611 B.R. 742, 765 (Bankr. E.D. Pa. 2020), this Court does not, on the record before it, find cause to believe that the bankruptcy was initiated with the aim of circumventing discovery in the present matter. Accordingly, the Government's motion for sanctions is denied, without prejudice to the Government filing a future request for sanctions should Defendant McGuckin fail to provide the records and information required by this Court's Order.

**CONCLUSION**

For the foregoing reasons, the Government's motion to compel the production of documents and for sanctions, (ECF 69), is granted, *in part*, and denied, *in part*. As noted, this Court finds that, because there has been an insufficient showing that Defendant McGuckin had "possession, custody, or control" of the requested documents associated with the VAC Entities, such records and information fall outside the scope of Rule 34(a)(1). Accordingly, the Government's request for an order compelling the discovery of those materials is denied. *See also* Fed. R. Civ. P. 37(a)(3)(B)(iv). However, the Court further finds that, because there has been a sufficient showing of Defendant McGuckin's control over the requested documents associated with the non-VAC Entities, such records and information fall within the scope of Rule 34(a)(1). Accordingly, the Government's request for an order compelling discovery of those materials is granted, to the extent that Defendant McGuckin has not yet provided them to the Government pursuant to Rule 37(a)(3)(B)(iv). Finally, the Government's motion for sanctions is denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.